UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JANICE BROWN,<br><br>                   Plaintiff,<br><br>v.<br><br>ANDREW KNAPP et al.,<br>                   Defendants. | Case No. 20-cv-12441<br>Honorable Shalina D. Kumar<br>Magistrate Judge David R. Grand |

**OPINION AND ORDER DENYING MSP DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (ECF NO. 44), DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 41),
GRANTING DEFENDANT ROSE'S MOTION FOR SUMMARY
JUDGMENT (ECF NO. 43), GRANTING DEFENDANT GENESEE
COUNTY'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 45), AND
GRANTING DEFENDANT GOULD'S MOTION FOR SUMMARY
JUDGMENT (ECF NO. 68)**

## I.    Introduction

This case against several state and county officials arises from

plaintiff Janice Brown's September 2018 arrest and ninety-six-hour

detention in Genesee County jail facilities. Brown asserts that Michigan

State Police troopers Andrew Knapp, Bryce Willoughby, Kenneth

Shingleton, and Thomas Dhooghe (collectively, the MSP defendants), and

Genesee County and Genesee County Jail Administrator Jason Gould

(collectively the Genesee County defendants) violated her Fourth

Amendment rights by detaining her for approximately four days without a probable cause determination. ECF No. 49. The MSP defendants and the Genesee County defendants move for summary judgment, asserting that they did not violate Brown's Fourth Amendment rights and are entitled to qualified immunity from Brown's claims. ECF Nos. 44, 45, 68. Brown also moves for partial summary judgment against the MSP and Genesee County defendants, contending there is no question of material fact that defendants violated her Fourth Amendment rights. ECF No. 41.

Brown's operative complaint also asserts that she was subject to an unconstitutional strip search by Officer Mackenzie Rose prior to her release from the Genesee County jail. ECF No. 49, PageID.1653, 1659. Defendant Rose moves for summary judgment of Brown's claims relating to the alleged strip search, contending that Brown has not adduced evidence that Rose was the officer who allegedly conducted the strip search. ECF No. 43.

The motions were fully briefed, this Court heard oral argument at hearing held on August 11, 2022, and this matter is ripe for determination. ECF Nos. 41, 43, 44, 45, 68, 55, 56, 57, 58, 61, 62, 63, 64, 66, 69, 70.

## II.    Factual Background

In September 2018, Brown traveled from her home in Arkansas to

Michigan to attend a court proceeding for her son, Dale Reed, Jr., who had been charged with murder and was being detained in the Genesee County jail in Flint. ECF No. 49, PageID.1647. On September 11, 2018, Brown was visiting her granddaughter (Reed's daughter), whose mother, Shaneen Jones, was named as a witness against Reed. *Id*. While at Jones's home, Shingleton and Dhooge arrived to serve a subpoena on Jones. *Id*. at PageID.1648. Shingleton and Dhooge, who saw Brown at the courthouse earlier that day, asked her why she was at Jones's house, and she responded that she was visiting her granddaughter. *Id*. Brown left Jones's house and returned after the troopers left. *Id*. at PageID.1649. Brown alleges that while she was gone, Shingleton and Dhooge asked Jones if Brown was bothering her or if she had offered her money not to testify against Reed. *Id*. Jones denied both questions. *Id*. Brown alleges that Shingleton and Dhooge believed she was responsible for Jones's lack of cooperation and refusal to testify against Reed. *Id*. at PageID.1649-50.

On September 14, 2018, Brown arrived at the courthouse, with her granddaughter and Jones, as well as a friend of Jones, for another proceeding against Reed. *Id*. at PageID.1650. Brown took her granddaughter into the courtroom while Jones and her friend went to speak to the prosecutor. *Id*. Jones apparently told the prosecutor she was unable

to provide implicating testimony against Reed, preventing the prosecution from proceeding with its probable cause hearing against Reed. *Id*. at PageID.1650-51. Brown and her granddaughter prepared to leave the courthouse, believing Jones and her friend had already exited. *Id*. at PageID.1651. As Brown was walking out, the prosecutor began to yell that she was bothering Jones. *Id*. Brown saw Reed's attorney entering the courtroom, so she decided to go back inside. *Id.* While sitting in the courtroom, Shingleton and/or Dhooge[1] confronted her, alleging that she had not been visiting her granddaughter the day they saw her with Jones because the granddaughter had been at school. *Id*. at PageID.1652. Shingleton and/or Dhooge left the courtroom. *Id*.

Approximately five minutes later, at 9:50 a.m., Willoughby and Knapp entered the courtroom and arrested Brown for witness intimidation. *Id*. Brown was transported and booked into the Flint City jail and later transferred to Genesee County jail. *Id*. at PageID.1653. Brown was released on September 18, 2018, some ninety-six hours after her arrest. *Id*. Brown, who never had a probable cause hearing, was released "pending further investigation" "per Singleton [sic] MSP." *Id*.

---

[1] Brown believes that Shingelton was in the courtroom on September 14th, but the MSP defendants contend that only Dhooge was present in court that day. ECF Nos. 44-3, PageID.1211; 44-5, PageID.1244.

Brown alleges that, as she was being released, she was subject to a strip search by a Genesee County deputy. *Id.* In her operative complaint, she identified and named Mackenzie Rose as the guard conducting the strip search, but Brown testified at deposition that she could remember no distinguishing physical characteristics of the guard who allegedly strip searched her. ECF No. 43-2, PageID.983. Brown testified that she did not "think [the guard] was any taller than her, at 5'6"." *Id.* at PageID.983-84. When asked if the guard had a heavier, slender, or regular build, Brown responded that "[s]he wasn't heavy." *Id.* at PageID.984. Brown could not indicate her hair color, or any identifying feature such as glasses, jewelry, tattoos, moles, or markings. *Id.*

## III.   Analysis

### A. Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary

judgment is appropriate is whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 251-52 (1986)). Additionally, the evidence and all

reasonable inferences must be construed in the light most favorable to the

non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material

fact, the burden of demonstrating the existence of such an issue shifts to

the non-moving party, who must come forward with "specific facts showing

that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986). That is, the party opposing a motion for summary

judgment must make an affirmative showing with proper evidence and must

designate specific facts in affidavits, depositions, or other factual material

showing "evidence on which the jury could reasonably find for the [non-

movant]." *Anderson*, 477 U.S. at 252. However, mere allegations or denials

in the non-movant's pleadings will not satisfy this burden, nor will a mere

scintilla of evidence supporting the non-moving party. *Id*. at 248, 251.

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

### B. Detention without Probable Cause Determination

Brown asserts that her Fourth Amendment rights were violated when the defendants detained her, first in the Flint City lock-up and then in the Genesee County jail, for roughly ninety-six hours before releasing her without a probable cause hearing. "The Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention." *Gerstein v. Pugh,* 420 U.S. 103, 126 (1975). "[J]udicial determinations of probable cause within 48 hours of arrest" generally comply with that promptness requirement; when "an arrested individual does not receive a probable cause determination within 48 hours, . . . the burden shifts to the government to demonstrate the existence of a bona

fide emergency or other extraordinary circumstance." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991).

Here, Brown's ninety-six-hour detention exceeded the permissible holding period. She advances a Section 1983 claim challenging the excessive detention without a probable cause determination, also known as a *Riverside* violation, against the MSP defendants who apprehended her and took her into custody without a warrant, as well as the Genesee County defendants who, pursuant to a county policy permitting release of detainees only upon the instruction of the arresting agency or the court, continued to detain Brown well after the permissible forty-eight-hour period.

### 1. MSP Defendants

The MSP defendants, acknowledging a *Riverside* violation, move for summary judgment, asserting that qualified immunity shields them from liability to Brown. ECF No. 44. Specifically, they argue that they are collectively entitled to qualified immunity because they did not intentionally violate Brown's right for a prompt probable cause determination and that their conduct did not violate clearly established constitutional rights of which a reasonable person would have known. *Id*. The Court disagrees.

Courts employ a two-tiered inquiry in analyzing a defendant's assertions of qualified immunity. *Courtright v. City of Battle Creek*, 839 F.3d

513, 518 (6th Cir. 2016). "The first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id*. (quoting *Martin v. City of Broadview Heights,* 712 F.3d 951, 957 (6th Cir. 2013)) (internal marks omitted). These inquiries may be addressed in any order, but both must be resolved in the affirmative for the plaintiff's claim to survive. *Id*. "If either step is not satisfied, then qualified immunity shields the government officer from civil damages." *Id.* Evaluating the defense of qualified immunity on a motion for summary judgment requires the court to adopt the plaintiff's version of the facts. *Drogosch v. Metcalf*, 557 F.3d 372, 377 (6th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372 (2007)) (marks omitted).

The MSP defendants assert that their limited involvement with Brown's detention did not require them to ensure that Brown received a prompt probable cause hearing. But courts "look to state law to determine who is responsible for ensuring that a judicial determination of probable cause is made within 48 hours after an arrest." *Cherrington v. Skeeter*, 344 F.3d 631, 644 (6th Cir. 2003); *see also Drogosch*, 557 F.3d at 379. Michigan law provides that

> [a] peace officer who has arrested a person for an offense
> without a warrant shall without unnecessary delay take the
> person arrested before a magistrate of the judicial district in
> which the offense is charged to have been committed, and shall
> present to the magistrate a complaint stating the charge against
> the person arrested.

*Drogosch*, 557 F.3d at 379 (quoting M.C.L. 764.13) (internal quotation marks

omitted). State law thus indicates that the arresting officer(s) must take a

warrantless detainee before a magistrate. *Id*.

Here, the MSP defendants admit that Dhooghe was instructed by the

prosecutor to arrest Brown for witness intimidation. ECF No. 44-3,

PageID.1211-1212. Dhooghe, who was dressed for his court appearance

and without handcuffs, asked his supervisor, Willoughby, to make the

arrest. *Id*. at PageID.1223. Willoughby, along with Knapp, arrested Brown

at the 67th District Court and transported her to the Flint Police

Department. ECF Nos. 44-7, PageID.1282-83, 44-8, PageID.1290.

Shingleton authored a supplemental police report detailing Brown's alleged

witness intimidation and her arrest. ECF No. 41, PageID.534. The parties

dispute whether Shingleton was present at the hearing or arrest on

September 14, 2018. ECF No. 44, PageID.1132, n.4. During Brown's

detention, Shingleton also took over for Dhooghe, who had transferred out

of the unit responsible for the Reed investigation,[2]  and, according to
Brown, received the reports from Genesee County jail indicating that Brown
remained in custody without a warrant or probable cause hearing for well
beyond forty-eight hours.[3] The MSP defendants do not contend that they
applied for a warrant or took any action toward securing a probable cause
hearing for Brown. ECF No. 44.

Despite the MSP defendants' subjective beliefs that they were not
Brown's arresting officers, on this record, some combination of the MSP
defendants, or perhaps all of them, are officers who arrested Brown without
a warrant and, as such, were obligated to secure a probable cause hearing
within forty-eight hours of detaining her. *Drogosch*, 557 F.3d at 379;
*Cherrington*, 344 F.3d at 644. Brown's alleged facts show the MSP
defendants' conduct violated her constitutional right.

"An officer cannot be said to have violated a clearly established right
unless the right's contours were sufficiently definite that any reasonable
official in [his] shoes would have understood that he was violating it,

---

[2] ECF No. 44-3, PageID.1213-14.

[3] Brown cites to pages 81-82 of Jason Gould's deposition, but these pages
are not attached to the briefing. The emails listing warrantless arrests sent
by Genesee County to the arresting agencies do not appear to have been
sent to Shingleton (or any of Brown's arresting officers) directly, but they
were sent to other MSP recipients. ECF No. 41-6, PageID.794-97.

meaning that existing precedent placed the statutory or constitutional question beyond debate." *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (internal quotations and marks omitted). Courts "must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018). Conversely, a "plaintiff need not always put forth 'a case directly on point' to show that his claimed rights were indeed clearly established at the time of the conduct." *Shumate v. City of Adrian, Mich*., 44 F.4th 427, 449 (6th Cir. 2022) (quoting *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021)). "Plaintiff need not show that the very action in question has previously been held unlawful, but in light of pre-existing law, the unlawfulness of the official action must be apparent." *Id.* (internal quotation and marks omitted).

The Sixth Circuit recognized that, as of 2003, arresting officers are on notice that they are responsible for safeguarding defendants' right to a probable-cause hearing within forty-eight hours. *See Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 509 (6th Cir. 2019) (citing *Cherrington*, 344 F.3d at 644)). Nevertheless, the MSP defendants argue that *Cherrington* and *Drogosch* are not sufficiently particularized to establish

Brown's rights in these circumstances as clearly established. ECF No. 44,
PageID.1150-52. Citing the Sixth Circuit's recent unpublished decisions in
*Rayfield* and *Roberson v. Wykoop*, they argue that the "unique" facts of
Brown's case sufficiently distinguish it from *Drogosch* and *Cherrington* so
as to undermine the clearly established nature of Brown's right to be free of
detention without a timely probable cause hearing. *Rayfield*, 768 F. App'x
at 508; *Roberson*, 2021 WL 5190902 (6th Cir. Nov. 9, 2021). The Court
finds these cases distinguishable and the MSP defendants' argument
unavailing.

First, in *Rayfield*, the plaintiff alleged that the arresting officers caused
his three-day detention without a probable cause hearing by failing to note
the length of his detention in the Grand Rapids lock-up to county officials
upon his transfer to the Kent County jail. 768 F. App'x at 508. The court
ruled the officers were entitled to qualified immunity because "this right was
not 'clearly established' *as applied to Rayfield's case*." *Id.* at 509 (emphasis
added).

> Although we have recognized that … officers are on notice that
> defendants have a right to a probable-cause hearing within 48
> hours, [precedent] does not deal with the factually and legally
> distinct situation presented by Rayfield's case, namely when two
> municipalities, both of which have authority to process a
> detainee, jointly manage the custody of a pre-hearing detainee.

*Id.* (internal citation omitted). In contrast here, Brown alleges that the arresting officers committed a conventional *Riverside* violation by failing to take any action that would result in a prompt hearing before a magistrate judge to determine if her arrest was supported by probable cause. ECF No. 49, PageID.1655, ¶ 63. As was clearly established by *Drogosch* and *Cherrington*, Brown's arresting officers were obligated to present her to the magistrate judge to assess probable cause for her warrantless arrest. *Drogosch*, 557 F.3d at 379-380; *Cherrington*, 344 F.3d at 644.

The court's ruling in *Roberson* is equally inapposite. The *Roberson* court granted the defendant state trooper qualified immunity based on a lack of binding precedent to clearly establish that the trooper's actions violated Roberson's Fourth Amendment rights. *Roberson*, 2021 WL 5190902 at *2. The court held that: "*Riverside* and its progeny do not clearly establish that an officer in Trooper Wykoop's position will be liable *in particularized circumstances like these*." *Id.* (emphasis added).

Roberson, a felon, was arrested when Wykoop, responding to a domestic dispute call, discovered a firearm and drug paraphernalia in the residence based on information from the reporting girlfriend. *Id.* at *1. Wykoop booked Roberson into the Saginaw County jail in the early hours of October 5th and requested a search and arrest warrant on the morning

of October 6th. *Id*. The prosecutor signed the warrants that same day, but a judicial officer did not hold a probable cause hearing or execute the arrest warrant until the morning of October 7th, a few hours beyond the forty-eight-hour window. *Id*. Notably, Roberson did not dispute that there was probable cause for his arrest, and he eventually pleaded guilty to several charges for drugs and possession of a firearm. *Id*.

The court noted that "once the report and warrant packet is placed in the in-custody bin, it is out of [the arresting officer's] hands and in the hands of the court officer, who then would handle getting the local prosecutor to review the request." *Id*. (internal marks omitted). On these facts, the court determined "it was not objectively unreasonable for Wynkoop to expect the process to occur in a timely manner as it normally does" and granted him qualified immunity for any violation of Roberson's Fourth Amendment rights. *Id*. at *3.

In the case at bar, Brown contests that there was probable cause to arrest her, and no criminal charges were filed against her. Crucially, the MSP defendants admit that they never requested a warrant for Brown's arrest or took any action relating to Brown or her detention after depositing her in lock-up. ECF Nos. 44-3, PageID.1219, 44-7, PageID.1283-84, 44-8, PageID.1292. Under the *Riverside* progeny, specifically *Drogosch* and

*Cherrington,* the arresting officers' obligation to make some effort to secure a probable cause hearing within forty-eight hours of detention was clearly established. *See Drogosch*, 557 F.3d at 379-380 and *Cherrington*, 344 F.3d at 644.

Even under *Roberson*, the MSP defendants' complete lack of effort in presenting Brown for a probable cause hearing within forty-eight hours was objectively unreasonable and outside the protection of qualified immunity. The Court rejects MSP defendants' argument that the underlying facts and circumstances of this case are so particularized to be outside the bounds of clearly established authority. As noted above, a "[p]laintiff need not show that 'the very action in question has previously been held unlawful, but in light of pre-existing law, the unlawfulness of the official action] must be apparent.'" *Shumate,* 44 F.4th at 449-50 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In sum, the Court finds that Brown experienced a *Riverside* violation and that the MSP defendants' obligation, as arresting officers, to take action to obtain a probable cause determination for Brown within forty-eight hours was clearly established. Accordingly, qualified immunity does not apply and the MSP defendants' motion for summary judgment on Brown's Fourth Amendment claim is denied.

Notwithstanding the Court's finding that the MSP defendants collectively violated Brown's clearly established Fourth Amendment right to a prompt probable cause determination, the complicated factual scenario surrounding Brown's arrest precludes granting her motion for partial summary judgment. Given the MSP defendants' fragmented participation in Brown's arrest, the question of which of the MSP defendants bear responsibility for the *Riverside* violation as an arresting officer must be presented to the jury.

### 2. Genesee County Defendants

Brown asserts that by failing to release her from jail within forty-eight hours after she was arrested without a warrant or a probable cause hearing, the Genesee County defendants are also liable for the *Riverside* violation. The Genesee County defendants argue that the arresting officers, here the MSP defendants, and not the jail, are responsible for securing a warrantless arrestee's probable cause determination and that there is no direct authority for holding jailors liable for a *Riverside* violation.

To support this argument, the Genesee County defendants direct the Court to *Leschorn v Fitzgerald*, 142 F.3d 434, 1998 WL 69036 (6th Cir. 1998). In *Leschorn*, the plaintiff was transferred from one county's jail to another county's facility due to overcrowding. 1998 WL 69036, at *2.

Plaintiff waited sixty hours for his probable cause hearing and sued the transferee jailor under Section 1983 for the *Riverside* violation. *Id*. Based on the overwhelming body of law that the person effecting a warrantless arrest of a suspect, i.e., the arresting officer, is the individual responsible for promptly delivering the arrestee to a probable cause hearing and the lack of authority deeming jailors liable for a *Riverside* violation, the court declined to hold the transferee jail accountable for the delayed hearing. *Id*. In so ruling, the court found that, "[b]y passing [the detainee's] request for a hearing on to the proper Harrison County authorities, the Carroll County defendants did all that they could reasonably be expected to do in this situation." *Id.*

Brown, citing *Caddell v. Campbell*, argues that officials other than arresting officers, including jailors whose customs or policies cause a *Riverside* violation, can be liable even though state law requires the arresting officer to effect a timely probable cause hearing. 2021 WL 2176597, at *13 (S.D. Ohio May 28, 2021). Indeed, the *Caddell* court held that a jailor may be liable for a *Riverside* violation if it "knowingly employed customs *ensuring* that an arrestee would not receive a timely probable cause hearing." *Id*. (emphasis added).

Brown asserts that Genesee County is liable for the *Riverside* violation at issue here based upon its policy of only releasing a warrantless detainee if the arresting agency or the court instructs it to do so. Of course, but for Genesee County's continued detention after the forty-eight hours elapsed, Brown could not have been detained for more than forty-eight hours without a hearing. But the jail's policy did not cause the *Riverside* violation, it merely failed to prevent it. Thus, even if *Caddell* were binding precedent, the Genesee County policy does not ensure an arrestee would not receive a timely hearing; it does not impede an arresting officer from taking the detainee before a magistrate for a probable cause determination. The release policy itself does not subject the Genesee County defendants to liability to Brown.

Release policy aside, the Genesee County defendants' part in Brown's over-detention does not subject them to liability for her *Riverside* violation. Indeed, the Genesee County jail sent daily reports to Brown's arresting agency, reminding it that Brown continued to be held on a warrantless arrest without a probable cause hearing, and when those daily reports did not generate any action, the jail contacted Shingleton, who authorized Brown's release. ECF No. 41-6, PageID.768, 794-97. Like the

jailors in *Leschorn*, the Genesee County defendants "did all that they could reasonably be expected to do in this situation." 1998 WL 69036, at *2.

### C. Malicious Prosecution

Courts recognize "a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment based on a defendant officer's wrongful investigation, prosecution, conviction, and incarceration of a plaintiff." *DiPasquale v. Hawkins*, 748 F. App'x 688, 693 (6th Cir. 2018) (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006) (quotation marks omitted)). "The 'tort of malicious prosecution' is 'entirely distinct' from that of false arrest, as the malicious-prosecution tort 'remedies detention accompanied not by absence of legal process, but by *wrongful institution* of legal process.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (emphasis in original)). As discussed at length previously, the gravamen of Brown's complaint was her detention without any probable cause determination or, in other words, the absence of legal process.

In any event,

[t]o succeed on . . . a [malicious prosecution] claim, a plaintiff must establish that (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the prosecution decision; (2) there was no probable cause to support the charges; (3) as a result of the legal proceedings, the plaintiff suffered a deprivation of liberty apart

from the initial seizure; and (4) the criminal proceedings ended
in the plaintiff's favor.

*DiPasquale*, 747 F. App'x at 693 (quoting *Miller v. Maddox*, 866 F.3d 386,

389 (6th Cir. 2017)). Here, Brown's claim for malicious prosecution fails as

a matter of law under the first element; no criminal prosecution was initiated

against her.

### D. Strip Search (Defendant Rose)

Defendant Rose asserts that Brown has not presented sufficient

evidence that Rose was the officer who conducted the alleged strip search.

An officer's liability must be based upon his or her own direct actions.

*Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008) (citing *Ghandi v.*

*Police Dep't of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984)). To

survive summary judgment, the non-moving party must provide evidence

on which a jury could reasonably find for the non-movant. *Bard v. Brown*

*County*, 916 F.3d 738, 748 (6th Cir. 2020).

Other than describing her as a Caucasian female, Brown could not

name a single other identifying feature for the officer who allegedly strip

searched her. ECF No. 42-3, PageID.983-84. She indicated that the officer

was not taller than 5'6" and did not have a heavy build. *Id.*  In contrast to

Brown's general descriptions of the searching officer as not taller than

medium height and not heavy, at the hearing, counsel noted Rose is

remarkably petite, even child-like in appearance. Transcript of Hearing, 8/11/22, p. 34.

Brown attempts to salvage her claim against Rose with an affidavit indicating that, once she observed Rose during her deposition (via Zoom), she immediately recognized her as the guard who strip searched her. ECF No. 57-2, PageID.1928-29. Brown's "affidavit is, at best, self-serving and it is well established that such '[s]elf-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment.'" *Diversicare Leasing Corp. v. Eden*, 2022 WL 3974242, at \*4 (E.D. Ky. Aug. 31, 2022) (quoting *Capital Telecom Holdings, II LLC v. Grove City*, 403 F. Supp. 3d 643, 649 (S.D. Ohio 2019)). Without the bootstrap of her self-serving affidavit, Brown's lack of evidence that Rose conducted the alleged strip search does not warrant submission to a jury. The Court finds summary judgment in favor of Rose is appropriate.[4]

## IV.   Conclusion

For these reasons, MSP defendants' motion for summary judgment (ECF No. 44) is **DENIED.** Brown's motion for partial summary judgment

---

[4] As noted at the hearing, any claim against the County relating to the strip search was dismissed or abandoned.

(ECF No. 41) is **DENIED**. Genesee County defendants' and Rose's

motions for summary judgment (ECF Nos. 43, 45, 68) are **GRANTED**.

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: September 28, 2022